UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Amrick Pabla and Dalvinder Pabla,<br>　　　Plaintiffs,<br><br>　　　　　v.<br><br>U.S. Bank National Association as Trustee for Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2005-7XS,<br>　　　Defendant. | *<br>*<br>*<br>*<br>*<br>*<br>*  Civil Action No. 1: 24-cv-12358-IT<br>*<br>*<br>*<br>*<br>*<br>* |

MEMORANDUM & ORDER

October 16, 2024

TALWANI, D.J.

　　Following an emergency hearing on Plaintiffs Amrick S. Pabla and Dalvinder Pabla's Motion for a Preliminary Injunction [Doc. No. 7-1] on October 1, 2024, this court finds that Plaintiffs have failed to demonstrate a likelihood of success on the merits. Therefore, Plaintiffs' motion is DENIED.

**I.　Background**

　　Plaintiffs seek to enjoin the foreclosure auction of real property known and numbered as 32 Solomon Pierce Road, Lexington, Massachusetts 02421 (the "Property"). The auction is scheduled for October 17, 2024. On January 12, 2005, a mortgage encumbering the Property was filed at the Registry. See State Court Complaint ¶ 8 [Doc. No. 1-3]. The mortgage listed Plaintiffs as the mortgagors and Mortgage Electronic Registration Systems ("MERS") as the mortgagee, as nominee for Lehman Brothers Bank, FSB. Id.; January 12, 2005 Mortgage [Doc. No. 13-3].

The present dispute primarily concerns four subsequent transactions or documents concerning the January 12, 2005 mortgage:

First, in 2008, an Assignment of Mortgage was filed at the Registry stating that MERS assigned its right, title, and interest in the 2005 mortgage to Aurora Loan Services, LLC ("Aurora Loan"). See April 22, 2008 Assignment of Mortgage at 2 [Doc. No. 13-4] (the "2008 Assignment"); State Court Complaint ¶ 7 [Doc. No. 1-3] (attesting to the authenticity of the document, submitted by Plaintiffs as Exhibits C1 and C2). Plaintiffs allege that "there is no valid assignment from MERS traceable to the Defendant" despite this 2008 Assignment but do not argue that the 2008 Assignment is invalid. See State Court Complaint ¶ 11 [Doc. No. 1-3].

Second, on June 6, 2008, Plaintiffs executed a loan modification agreement ("2008 Loan Modification Agreement"), signed by Aurora Loan as the lender and MERS as the mortgagee. See Id. at ¶ 11 (referencing the 2008 Loan Modification Agreement); May 28, 2008 Loan Modification Agreement [Doc. No. 13-6]. The 2008 Modification adjusted, among other things, Plaintiffs' interest rate, from 7.125% annually, see January 12, 2005 Promissory Note at 2 [Doc. No. 13-2], to 5.750% annually. See May 28, 2008 Loan Modification Agreement at 3 [Doc. No. 13-6]. On its face, the 2008 Loan Modification Agreement did not purport to change any obligations between Plaintiffs and MERS. Neither party alleged facts sufficient for this court to determine why MERS was listed as the mortgagee following the 2008 Assignment.

Third, Plaintiffs executed a loan modification agreement in 2011 ("2011 Loan Modification Agreement"), listing Aurora Loan as the "current holder of the Note" and of the mortgage at issue in this case. See April 1st, 2011 Loan Modification Agreement at 2 [Doc. No. 13-8]; State Court Complaint ¶ 7 [Doc. No. 1-3] (attesting to the authenticity of the document, submitted in partial form by Plaintiffs as Exhibit G). The 2011 Loan Modification Agreement

2

increased Plaintiffs monthly payments of principal and interest but left Plaintiffs' interest rate the same. See April 1st, 2011 Loan Modification Agreement at 3 [Doc. No. 13-8].

Fourth, on March 16, 2012, Aurora Loan assigned its right, title, and interest in the mortgage to Aurora Bank FSB ("Aurora Bank"). See March 16, 2012 Assignment at 2 [Doc. No. 13-9] (the "2012 Assignment"); State Court Complaint ¶ 7 [Doc. No. 1-3] (attesting to the authenticity of the document, submitted in partial from by Plaintiffs as Exhibit H).[1] According to Plaintiff, although there was a Limited Power of Attorney between Aurora Loan and Aurora Bank by which Aurora Loan appointed Aurora Bank as the true and lawful attorney for Aurora Loan, see Limited Power of Attorney at 3 [Doc. No. 13-10], this Limited Power of Attorney was invalid as to the 2012 Assignment because it did not expressly include the mortgage at issue in this case. See State Court Complaint ¶ 11 [Doc. No. 1-3].

Following these transactions, a further assignment was filed with the Registry stating that Aurora Bank assigned its right, title, and interest in the mortgage to Nationstar. See October 19, 2012 Assignment [Doc. No. 13-11]; State Court Complaint ¶ 7 [Doc. No. 1-3] (attesting to the authenticity of the document, submitted in partial form by Plaintiffs as Exhibit I). Nationstar then assigned its rights, title, and interest to Defendant. See September 21, 2016 Assignment [Doc. No. 13-12]; State Court Complaint ¶ 7 [Doc. No. 1-3] (attesting to the authenticity of the document, submitted in partial form by Plaintiffs as Exhibit J). Plaintiff contends that flaws in the chain of title make these assignments invalid. See State Court Complaint ¶ 11 [Doc. No. 1-3].

---

[1] Defendant states that this assignment occurred on May 24, 2013.

**II.     Discussion**

The issuance of a preliminary injunction before a trial on the merits can be held is an "extraordinary remedy" that shall enter only if a plaintiff makes a clear showing of entitlement to such relief. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). In evaluating a motion for a preliminary injunction, the court considers four factors:

> (1) the likelihood of success on the merits; (2) the potential for irreparable harm [to the movant] if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest.

Esso Standard Oil Co. v. Monroig–Zayas, 445 F.3d 13, 18 (1st Cir. 2006) (quoting Bl(a)ck Tea Soc'y v. City of Boston, 378 F.3d 8, 11 (1st Cir. 2004)).

The first factor is the most important: if the moving party cannot demonstrate a likelihood of success on the merits, "the remaining factors become matters of idle curiosity." New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002). "To demonstrate likelihood of success on the merits, plaintiffs must show 'more than mere possibility' of success—rather, they must establish a 'strong likelihood' that they will ultimately prevail." Sindicato Puertorriqueño de Trabajadores v. Fortuño, 699 F.3d 1, 10 (1st Cir. 2012) (quoting Respect Maine PAC v. McKee, 622 F.3d 13, 15 (1st Cir. 2010)).

Plaintiffs have failed to demonstrate a likelihood of success on the merits. Plaintiffs make two arguments for why Defendant does not hold valid title to their mortgage. *First*, Plaintiffs maintain that the chain of title of their mortgage is invalid because there is no valid assignment from MERS that can be traced to U.S. Bank. See Mem. in Support of Request for Preliminary Injunction at 4 [Doc. No. 7-2]. That seems immediately incorrect given that MERS assigned the mortgage to Aurora Loan in the 2008 Assignment. See April 22, 2008 Assignment of Mortgage [Doc. No. 13-4]. That assignment notwithstanding, Plaintiffs argue that "MERS essentially

4

became an assignee of the mortgage" because the 2008 Loan Modification Agreement listed MERS as the mortgagee, after MERS had already assigned the mortgage to Aurora Loan. See Mem. in Support of Request for Preliminary Injunction at 4 [Doc. No. 7-2]; May 28, 2008 Loan Modification Agreement [Doc. No. 13-6]. Plaintiffs argue that since the 2008 Loan Modification Agreement made MERS a mortgagee again and since no assignment from MERS to another party was ever recorded after the 2008 Loan Modification Agreement, there is no valid assignment from MERS of the mortgage.

The court does not read the 2008 Loan Modification Agreement as making MERS an assignee of the mortgage, however, where the agreement contains no language suggesting an assignment. The relevant statute suggests a low bar for reading a document as effecting an assignment. See M.G.L. c. 183 § 28 ("In an assignment of a mortgage of real estate the word 'assign' shall be a sufficient word to transfer the mortgage, without the words 'transfer and set over'"). But with not only the word "assign" but any language referencing an assignment missing from the terms of the modification agreement, the 2008 Loan Modification Agreement fails to meet even that standard. In that way, the 2008 Loan Modification Agreement stands in sharp contrast to the 2008 Assignment, which included language such as: "the said Assignor hereby assigns onto the above-named Assignee, the said Mortgage together with the Note or other evidence of indebtedness . . ." April 22, 2008 Assignment of Mortgage at 2 [Doc. No. 13-4].

Regardless, Plaintiffs are estopped from challenging any pre-2011 assignments of the mortgage. Estoppel is established where a party has shown "(1) a representation intended to induce reliance on the part of a person to whom the representation is made; (2) an act or omission by that person in reasonable reliance on the representation; and (3) detriment as a

consequence of the act or omission." Barrasso v. New Century Mortgage Corp., 91 Mass. App. Ct. 42, 48 (2017) (quoting Reading Co-op. Bank v. Suffolk Constr. Co., 464 Mass. 543, 556 (2013)), *rev. denied*, 477 Mass. 1104 (2017).

Plaintiffs argue that the circumstances differ from those in Barrasso, In Barrasso, as here, the plaintiff sought to invalidate a mortgagee's title based on alleged problems in the chain of title. Id. at 46. The original mortgagee transferred the relevant mortgage to another party, C-BASS Trust, but the original mortgagor was not listed on the agreement that purported to make the transfer, and no assignment showing a transfer to C-BASS Trust was immediately recorded. Id. at 44. The plaintiff subsequently signed a loan modification agreement as to the relevant mortgage with a trustee of C-BASS Trust. Id. The loan modification agreement also included plaintiff's explicit waiver of all forms of challenge to the mortgage. Based on these facts, the court held that the plaintiff was estopped from challenging C-BASS Trust's, and its trustee's, ownership of the mortgage. Id. at 48.

Plaintiffs argue that Barrasso is distinguishable in light of the explicit waiver. But while there is no explicit waiver here and the facts are therefore not as egregious as in Barrasso, Plaintiffs point to no disagreement with the law concerning estoppel as expressed in that case. And applying that standard, Plaintiffs are estopped from challenging any assignments of the mortgage before 2011. Plaintiffs made a representation intended to induce reliance on the part of a person to whom the representation is made, namely acknowledging Aurora Loan as the then-holder of the note and mortgage. Aurora Loan acted in reasonable reliance on the representation and to its detriment by modifying the terms of the loan. Plaintiffs, having benefitted from the 2011 Loan Modification Agreement listing Aurora Loan as the mortgagee, cannot now challenge the validity of Aurora Loan's ownership at the time of the modification agreement. "Having

accepted and benefited from a modification of the [] mortgage . . . [plaintiff] cannot now escape enforcement of the first mortgage by questioning [the trustee's] ownership of it as of the effective date of the modification." Id.

*Second*, Plaintiffs argue that U.S. Bank is not a valid mortgagee due to defects in the 2012 Assignment, in which Aurora Loan assigned the mortgage to Aurora Bank. See Mem. in Support of Request for Preliminary Injunction at 5 [Doc. No. 7-2]; March 16, 2012 Assignment [Doc. No. 13-9]. A preliminary issue is whether Plaintiffs have standing to challenge the assignments to which they were not parties. The First Circuit has explained that a "a mortgagor has standing to challenge a mortgage assignment as invalid, ineffective, or void (if, say, the assignor had nothing to assign or had no authority to make an assignment to a particular assignee)[,]" but "does not have standing to challenge shortcomings in an assignment that render it merely voidable by one party to the assignment but otherwise effective to pass legal title." See Culhane v. Aurora Loan Services of Nebraska, 708 F.3d 282, 291 (1st Cir. 2013) (emphasis added). See also Bank of New York Mellon Corp. v. Wain, 85 Mass. App. Ct. 498, 502 (2014) ("a mortgagor's standing was limited to claims that a defect in the assignment rendered it void, not merely voidable"); Sullivan v. Kondaur Capital Corp., 85 Mass. App. Ct. 202, 206 n.7 (2014) (explaining the same).

The issue, then, is whether, based on the defect alleged by Plaintiffs, the 2012 Assignment is void or merely voidable. Plaintiffs allege that the assignment was defective because the Limited Power of Attorney concerning the assignment did not "expressly include" the mortgage at issue in this case. See Mem. in Support of Request for Preliminary Injunction at 5 [Doc. No. 7-2]. But any such defect in the Power of Attorney renders the assignment merely voidable. Another court has held that a foreclosure deed is merely voidable if the relevant Power

7

of Attorney fails to authorize the execution of the foreclosure deed. See Culley v. Bank of America, N.A., No. 18-cv-40099-DHH, 2019 WL 1430124, at *14 (D. Mass. March 29, 2019). This court similarly concludes that the alleged defect in the Power of Attorney here is, at most, a "procedural infirmity" that makes the assignment voidable but not void. See Woods v. Wells Fargo Bank, N.A., 733 F.3d 349, 354 (1st Cir. 2013) ("claims that merely assert procedural infirmities in the assignment of a mortgage . . . are barred for lack of standing."). That conclusion is supported by a relevant Massachusetts statute, which establishes that any "assignment of mortgage . . . if executed before a notary public . . . or other officer entitled by law to acknowledge instruments . . . by a person  . . . purporting to be an authorized signatory for such entity, or acting under such power of attorney on behalf of such entity . . . shall be binding upon such entity . . . ." M.G.L. c. 183 § 54B. See also Wilson v. HSBC Mortg. Services, Inc., 744 F.3d 1, 13 (1st Cir. 2014) (holding that an assignment executed by a person purporting to act pursuant to her authority as a vice president of an entity was binding on that entity). Because the defects alleged in the power of attorney would, at most, render the 2012 Assignment voidable, Plaintiffs lack standing to challenge the 2012 Assignment.

Because Plaintiffs have not demonstrated a likelihood of success on the merits, this court need not consider the potential for irreparable harm, the balance of hardships, or the potential effect of this court's ruling on the public interest.

For the foregoing reasons, Plaintiffs' motion is DENIED.

IT IS SO ORDERED.

October 16, 2024                         /s/ Indira Talwani          
                                                        United States District Judge